UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

APRIL LEON, o/b/o J.E.V.,

        Plaintiff,

  -vs-

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

        Defendant.

**DECISION and ORDER
No. 1:15-cv-00914(MAT)**

---

## INTRODUCTION

Represented by counsel, April Leon ("Plaintiff") has brought this action on behalf of her infant son ("J.E.V." or "Claimant") pursuant to Title XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner")[1] denying J.E.V.'s application for Supplemental Security Income ("SSI"). The Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c).

## PROCEDURAL STATUS

On April 11, 2012, Plaintiff filed an application for SSI on J.E.V.'s behalf, asserting a disability onset date of January 10,

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 20, 2017. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted, therefore, for Acting Commissioner Carolyn W. Colvin as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

2010. The claim was denied initially on August 28, 2012. Plaintiff thereafter filed a written request for hearing on September 10, 2012.

A hearing was scheduled for December 10, 2013, in Rochester, New York before Administrative Law Judge Michael W. Devlin ("the ALJ"). On the hearing date, Plaintiff called and requested a postponement due to transportation issues. (T.330).[2] A postponement was apparently granted and a new hearing was noticed for April 8, 2014. (T.146).

On February 26, 2014, Plaintiff wrote a letter to the ALJ asking that she and her son be permitted to testify by telephone because they did not have transportation to get to the hearing. (T.331). J.E.V.'s attorney sent a follow-up letter, requesting that Plaintiff and her son allowed to appear by telephone. In the alternative, J.E.V.'s attorney stated that if their request were denied, Plaintiff, on behalf of J.E.V., waived the right to present testimony and requested a decision based on the evidence in the file. (T.332).

On May 28, 2014, the ALJ issued a decision finding J.E.V. not disabled. (T.78-90). It does not appear that the ever ruled on Plaintiff's request to appear by telephone.

---

[2] Citations in parentheses to "T." refer to pages from the certified transcript of the administrative record.

The Appeals Council denied Plaintiff's request for review on August 26, 2015, making the ALJ's decision the final decision of the Commissioner. Plaintiff then timely commenced this action.

## THE ALJ'S DECISION

The ALJ applied the three-step sequential evaluation process for deterimining whether an individual under the age of 18 is disabled. See 20 C.F.R. § 416.924(a).

At step one, the ALJ noted that J.E.V. was born on January 10, 2009, making him an older infant on April 11, 2012, the date application was filed. At the time of the ALJ's decision, J.E.V. was a preschooler. J.E.V. had not engaged in substantial gainful activity since April 11, 2012, the application date.

At step two, J.E.V. was found to have the following severe impairments: attention deficit hyperactivity disorder ("ADHD"); impulse control disorder; communication disorder; adjustment disorder with anxiety and depressed mood; and enuresis.

At step three, the ALJ determined that J.E.V. does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, including Listings 112.04, 112.08, and 112.11. The ALJ also determined that J.E.V. does not have an impairment or combination of impairments that functionally equals the severity of any of the listed impairments because he does not have "marked" limitations in two domains of functioning or

"extreme" limitations in one domain of functioning. Accordingly, the ALJ entered a finding of not disabled.

## DISCUSSION

### I. The ALJ's Analysis of Claimant's Limitations in the Domain of Attending and Completing Tasks Is Insufficient (Plaintiff's Point I)

Plaintiff argues that the ALJ's finding that J.E.V. did not have a marked impairment in attending and completing tasks was too cursory to allow for meaningful judicial review, and was not based on substantial evidence because it relied on a misreading of the record. The Commissioner contends that the overwhelming weight of the opinion evidence supports the finding that J.E.V.'s limitations did not rise to the marked level of severity.

The ALJ's decision recites that "[a]ttending and completing tasks . . . refers to a child's ability to avoid impulsive thinking and his ability to prioritize competing tasks and manage his time." (T.86). As "[s]ome examples of difficulty children could have in attending and completing tasks[,]" the ALJ's decision lists being easily startled, distracted, or over-reactive to everyday sounds, sights, movements, or touch; being slow to focus on, or fail to complete, activities of interest; repeatedly becomeing side-tracked from activities or frequently interrupting others; being easily frustrated and gives up on tasks, including ones he is capable of completing; and requiring extra supervision to remain engaged in an activity. (Id.).

With regard to the domain of attending and completing tasks, the ALJ assessed J.E.V. as having a "less than marked limitation." (T.86). The ALJ's explanation reads as follows:

> [J.E.V.] reportedly often gives up during class and is highly distracted by extraneous noises and people. He has been prescribed Guanfacine by his treating physician and it appears to help reduced the symptoms of his ADHD. The record has not shown his limitations arise to the marked level.

(T.86). As Plaintiff notes, only two specific arguments were advanced by the ALJ in support of his finding that J.E.V. has a less than marked limitation in the domain of attending and completing tasks. First, the ALJ noted that J.E.V. is reported to be "highly distracted by extraneous noises and people." It is unclear to the Court why, based on this piece of evidence—which is an example of a difficulty a child could have in attending and completing tasks—the ALJ assessed a less than marked impairment in attending and completing tasks. Second, the ALJ asserted that some degree of improvement "appeared" to have occurred with medication. Even assuming that Guanfacine was effective in helping to reduce his ADHD-like symptoms, it does not preclude a finding that J.E.V. might still have marked impairments despite improvement with medication. See, e.g., F.S. v. Astrue, No. 1:10-CV-444 MAD, 2012 WL 514944, at *16 (N.D.N.Y. Feb. 15, 2012) ("The fact that plaintiff 'improved with medication' does not preclude a finding of marked limitations in any domain.") (citing Gorman v. Astrue, No. 5:08-cv-0251, 2009 WL 4884469, at *7 (N.D.N.Y. Dec. 10, 2009)

("[The nurse practitioner]'s statements that [the infant claimant]'s 'concentration and focus had improved with medication' and experienced a 'marked difficult[y] in concentration' are not necessarily inconsistent. It seems logical that an individual could improve from a worse state to a marked level of difficulty.")). This statement, because it is ambiguous, frustrates meaningful appellate review. Moreover, it does not give an accurate misrepresentation of the complete record. Guanfacine in fact was discontinued by Psychiatric Nurse Practitioner Gerald Turk ("NP Turk") on February 20, 2013, because it was of "little benefit" in addressing J.E.V.'s ADHD-like symptoms. (See T.601-03).[3]

The Commissioner argues that the section of the ALJ's decision under the domain heading of attending and completing tasks does not represent the entirety of the ALJ's analysis relevant to that domain. The Commissioner points out that, in an earlier section of the decision, the ALJ assigned "significant weight" to the opinions of consultative psychologist Dr. Christine Ransom and State agency

---

[3]
At the February 20, 2013 appointment, J.E.V.'s mother reported many ADHD symptoms, including difficulty staying seated and waiting for his turn, answering questions before they are completed, difficulty following instructions and paying attention, and shifting from one activity to another. He had also become increasingly anxious. On mental status examination, NP Turk noted that J.E.V.'s eye contact was poor, his mood was labile, his affect was restricted, his cognition and memory were associated with a short attention span, his thought process was unreasonable, his insight was limited insofar as he has "little appreciation for the impact of his behavior on others;" and judgment was impaired "as evidenced by [his] history of impulsivity and unpredictability." (T.602). NP Turk's clinical impressions were that J.E.V. "demonstrate[d] many symptoms associated with [ADHD] and he is highly oppositional[,]" and he also has "many symptoms associated with anxiety," which his mother believes is related to her incarceration about a year ago." (Id.). Diagnoses were adjustment disorder; anxiety; depressed mood; enuresis; and rule out ADHD. (Id.).

review consultant Dr. Meyer, which the Commissioner argues support a finding of less than marked limitation in the area of attending and completing tasks.[4] Thus, the Commissioner suggests, she is not making an impermissible post hoc argument to supply a rationale for the ALJ, because his rationale is already evident from the decision. It is not clear to the Court that this the case, especially since the ALJ prefaces his discussion of the six domains by stating that he "finds the following regarding limitations caused by the claimant's impairments: . . . ." (T.89). This signals that the discussion that preceded this section did not contain findings regarding J.E.V.'s impairments. Even accepting the Commissioner's explanation about the structure of the ALJ's decision, a lack of clarity remains since the ALJ also gave "significant weight" to the teacher evaluation of Kimberly Callaro ("Ms. Callaro"). Ms. Callaro opined that J.E.V. had "very serious problems"[5] in changing from one task to another, working without distraction, seeking attention appropriately, expressing anger appropriately, respecting and obeying adults, and handling frustration appropriately. (See T.84, 300). While Ms. Callaro's opinion overlapped with the opinions of Dr. Ransom and Dr. Meyer in

---

4

For instance, Dr. Ransom found that J.E.V.'s concentration and attention were intact during the consultative examination. (T.534).

5

See 20 C.F.R. § 416.926a(e)(3)(i) (An "extreme" limitation exists when the impairment "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities.").

some regards, it did not overlap in regards to the consultants' opinions with regard to the domain of attending and completing tasks. The Court is thus left to speculate as to how the ALJ reconciled these disparate opinions. Remand is required for a more complete analysis of J.E.V.'s limitations in the domain of attending and completing tasks.

II. **The ALJ's Findings With Regard to the Domains of "Caring for Oneself" and "Interacting and Relating With Others" Are Internally Inconsistent (Plaintiff's Point II)**

Plaintiff notes that in the present case, the ALJ recognized that J.E.V.'s history of temper tantrums was the type of impairment that affected two domains of functioning—his ability to care for himself, and his ability to interact and relate with others.[6] However, Plaintiff argues, the ALJ made internally inconsistent findings regarding J.E.V.'s temper tantrums. In the domain of caring for himself, the ALJ assessed a "marked" impairment, and reasoned that "[d]ue to his history of outbursts, it is clear that he has marked limitations in the ability to care for himself."

---

6

Such a finding is contemplated by Social Security Ruling ("SSR") 09-1P, 2009 WL 396031 (S.S.A. Feb. 17, 2009), which instructs that it is "incorrect to assume that the effects of a particular medical impairment must be rated in only one domain or that a combination of impairments must always be rated in several. Rather, adjudicators must consider the particular effects of a child's impairment(s) on the child's activities in any and all of the domains that the child uses to do those activities, based on the evidence in the case record." Id. at *3 (footnote omitted).

(T.89). Then, when discussing that same history of outbursts in the domain of interacting and relating with others, the ALJ determined that J.E.V. has a "less than marked limitation" and called into question the severity of J.E.V.'s tantrums. (See T.87) ("He continues to have tantrums while on medication but during the consultative examination, he was described as cooperative and socially appropriate."). Thus, the ALJ made inconsistent findings with regards to the severity of J.E.V.'s tantrums, at one point arguing that they clearly justified a marked limitation in the domain of caring for himself, and on the other calling into question whether they are actually severe. Hill v. Astrue, No. 1:11-CV-0505 MAT, 2013 WL 5472036, at *13 (W.D.N.Y. Sept. 30, 2013) (remanding where ALJ "clearly contradict[ed]" himself; the ALJ "not only found that [the claimant] had the 'severe' impairments of depression and a learning disability, he concluded that these impairments cause 'significant limitation' in her ability to do basic work activities" but also "found that exclusive reliance on the Grids was appropriate because [the claimant]'s impairments had 'little or no effect on the occupational base of unskilled work at all exertional levels'") (citation omitted); Surita ex rel. Cifuentes v. Astrue, 2008 WL 4998426, at *6 (S.D.N.Y.,2008) ("The ALJ also failed to explain how he reached the contradictory conclusions that [the claimant]'s impairments caused a 'marked' limitation in his ability to move about and manipulate

objects, but did not also 'interfere with his age-appropriate major daily activities.' . . . . Under the SSA disability listings, it is unclear how an impairment that 'seriously interferes' with a child's ability to engage in initiate, sustain, or complete activities does not also have the potential to 'interfere with age-appropriate major daily activities.'"). Some explanation is required why J.E.V.'s history of outbursts was severe enough to clearly warrant a finding of a marked impairment in the domain of caring for himself, but not in the domain of interacting and relating with others. See id.

**III. Failure to Rule on Plaintiff's Request to Appear by Telephone (Plaintiff's Point III)**

Plaintiff argues that the ALJ erred in misconstruing her request to appear by telephone as a request to adjourn the hearing, and failed to rule on her request to appear by telephone as a result of this mistake. The Commissioner suggests that the ALJ's failure to rule on Plaintiff's request to allow her and her son to appear by telephone is not reviewable because it is not a "final decision."

The Court notes that the applicable regulation states as follows:

> The administrative law judge will direct you or another party to the hearing to appear by telephone when. . . . [t]he administrative law judge determines, either on his own, or at your request or at the request of any other party to the hearing, that extraordinary circumstances prevent you or another party to the hearing from appearing at the hearing in person.

-10-

20 C.F.R. § 416.1636(c)(ii); see also Hearings and Appeals Litigation Law Manual ("HALLEX") I-2-3-10.[7] "Extraordinary circumstances at the claimant's request are generally limited to incarceration, institutionalization, natural disasters, or very unusual circumstances directly related to a claimant's impairments." HALLEX I-2-0-15.[8]

Here, in a letter dated March 31, 2014, Plaintiff's attorney explained to the ALJ that Plaintiff lived 48 miles from the Social Security Administration office and did not have any family in the area. She had also contacted the Department of Social Services ("DSS") about a ride, but was informed that DSS does not cover rides to and from Social Security hearings. (T.332). The attorney concluded the letter by stating that "[i]f phone testimony is not allowed, [Plaintiff] waives her right to testimony and allows [the ALJ] to make a decision based upon the evidence in the file." (T.332).

Absent a showing of coercion or deception, which has not been made here, an attorney's conduct is imputed to the claimant. Zabala v. Astrue, 595 F.3d 402, 408 (2d Cir. 2010) (citation omitted). Plaintiff's counsel indicated to the ALJ that, if telephonic testimony was not allowed, the ALJ could proceed to issue a

---

[7] available at https://www.ssa.gov/OP_Home/hallex/I-02/I-2-3-10.html (last accessed Feb. 27, 2018).

[8] available at https://www.ssa.gov/OP_Home/hallex/I-02/I-2-0-15.html (last accessed Feb. 27, 2018).

decision on the record. It appears to this Court that Plaintiff waived her procedural argument regarding the ALJ's failure to rule explicitly on the request to appear telephonically.

However, even assuming that the ALJ omitted to issue a ruling, any procedural error was harmless. The standard for obtaining permission to appear telephonically is stringent. As set forth in the HALLEX, the request must be supported by "[e]xtraordinary circumstances" which are "generally limited to incarceration, institutionalization, natural disasters, or very unusual circumstances directly related to a claimant's impairments." HALLEX I-2-0-15.[9] None of these representative examples are present here. "Extraordinary circumstances do not exist when appearing by telephone would merely be more convenient to the claimant, appointed representative, or both." Id. Plaintiff has not cited any cases indicating that difficulty with obtaining transportation has been held to be "extraordinary circumstances" in this context, and the Court has found none in its independent research. Where "application of the correct legal standard could lead to only one conclusion." Schaal v. Apfel, 134 F.3d 496, 504 (2d Cir. 1998), "there is no need to require agency reconsideration." Zabala, 595 F.3d at 409 (quotation omitted). Therefore, the Court declines to remand the case for purposes of the ALJ issuing a written decision regarding Plaintiff's request to appear telephonically.

---

[9] available at https://www.ssa.gov/OP_Home/hallex/I-02/I-2-0-15.html (last accessed Feb. 27, 2018).

**CONCLUSION**

For the foregoing reasons, the Commissioner's decision is reversed because it is legally erroneous and unsupported by substantial evidence. Defendant's motion for judgment on the pleadings is denied, and Plaintiff's motion for judgment on the pleadings is granted to the extent that the matter is remanded for further administrative proceedings consistent with this Decision and Order. In light of the fact that Plaintiff's application was first filed in 2012 (nearly six years ago), on remand, the Commissioner is instructed to consider her claim on an expedited basis, to be completed no later than October 31, 2018.

The Clerk of Court is directed to close this case.

**SO ORDERED.**

S/Michael A. Telesca

HON. MICHAEL A. TELESCA
United States District Judge

Dated: February 28, 2018
Rochester, New York.